## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HIGH RIDGE BRANDS CO., *et al.*,[1] | ) | Case No. 19–12689 (BLS) |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Ref. Docket No. 12** |

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506 AND 507, (I) AUTHORIZING THE DEBTORS TO OBTAIN A SENIOR SECURED SUPERPRIORITY POSTPETITION FINANCING FACILITY, (II) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, (VI) SCHEDULING A FINAL HEARING AND (VII) GRANTING RELATED RELIEF**

This matter is before the Court on the motion dated December 18, 2019 (the "**Motion**")[2] of High Ridge Brands Co. and its affiliated debtors, as debtors-in-possession (collectively, the "**Debtors**") in the above-referenced chapter 11 cases (collectively, the "**Chapter 11 Cases**"), for entry of an interim order (this "**Interim Order**") and a final order ("**Final Order**"), under sections 105, 361, 362, 363(c)(2), 363(e), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 503, 506(c), and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy Code**"), and rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "**Bankruptcy Rules**") and rule 4001-2 and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), seeking, among other things:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: High Ridge Brands Holdings, Inc. (5996); HRB Midco, Inc. (8170); HRB Buyer, Inc. (3945); High Ridge Brands Co. (5871); Golden Sun, Inc. (4712); Continental Fragrances, Ltd. (2541); Freshcorp, Inc. (3238); Children Oral Care, LLC (disregarded entity for tax purposes); and Dr. Fresh, LLC (5167). The mailing address for each of the Debtors is 333 Ludlow Street, South Tower, 2nd Floor, Stamford, Connecticut 06902.

[2] All defined terms shall have the meaning ascribed to them in the Motion or DIP Credit Agreement (as defined below) unless otherwise defined herein.

(1)      authorization for High Ridge Brands Co.; Golden Sun, Inc.; Continental Fragrances, Ltd.; Freshcorp, Inc.; Children Oral Care, LLC; and Dr. Fresh, LLC, as debtors and debtors-in-possession (the "**DIP Borrowers**"), to obtain postpetition financing (the "**DIP Facility**") and for HRB Buyer, Inc. (the "**DIP Guarantor**" and together with the DIP Borrowers, the "**DIP Debtors**"), as debtor and debtor-in-possession, to guarantee unconditionally the DIP Borrowers' obligations under the DIP Facility, in the aggregate maximum principal amount of up to $40 million consisting of (a) a senior secured, superpriority multi-draw term loan facility in the aggregate amount not to exceed $20 million (the "**DIP TL Facility**" and the loans thereunder, the "**DIP Term Loans**"), of which up to $12.5 million (the "**Initial Committed Amount**") may be advanced immediately following the entry of this Interim Order and (b) a roll-up facility (the "**Roll-Up Facility**" and the loans thereunder, the "**Roll-Up Loans**"; the DIP Term Loans and the Roll-Up Loans, collectively, are the "**DIP Loans**") in an aggregate amount not to exceed $20 million, with BMO Harris Bank N.A. as administrative agent (in such capacity, the "**DIP Agent**") for itself and the DIP Lenders (as defined below), subject and pursuant to the terms of this Interim Order, that certain Senior Secured, Superpriority Debtor-In-Possession Credit Agreement by and among the DIP Borrowers, the DIP Guarantor, the DIP Agent, and the lenders party thereto (collectively, the "**DIP Lenders**"), substantially similar to the form attached hereto as <u>Exhibit 1</u> (as the same may be amended, restated, supplemented or otherwise modified from time to time pursuant to the terms thereof, the "**DIP Credit Agreement**"), and that certain Pledge and Security Agreement (the "**DIP Security Agreement**") to be executed by and among the DIP Debtors and the DIP Agent and any related documents and instruments delivered pursuant to or in connection therewith (collectively, and together with the DIP Credit Agreement, the "**DIP Loan Documents**");

(2)      authorization for the DIP Debtors to (i) execute and enter into the DIP Loan Documents and (ii) perform such other and further acts as may be required or desirable in connection with the DIP Loan Documents;

(3)      authorization for the DIP Debtors to grant (i) valid, enforceable, nonavoidable and fully perfected security interests and liens (including liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code and priming liens pursuant to section 364(d) of the Bankruptcy Code on Prepetition First Lien Collateral (as defined below)) to the DIP Agent, for the benefit of the DIP Agent and the DIP Lenders (collectively, the "**DIP Secured Parties**") to secure all obligations of the DIP Debtors under and with respect to the DIP Facility (collectively, the "**DIP Obligations**"), subject to the Carve-Out (as defined below) and to valid, perfected and non-avoidable liens on property of the DIP Debtors (including the proceeds of such property) that are (A) liens senior by operation of law or Customary Permitted Liens (as defined in the Prepetition First Lien Credit Agreement) in existence on the Petition Date (the "**First Lien Permitted Liens**") and senior in priority to the Prepetition FL Liens (as defined below) as of the Petition Date or (B) liens perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code (the foregoing clauses (A) and (B) being referred to collectively as the "**Permitted Prior Senior Liens**") and (ii) superpriority claims (including a superpriority administrative expense claim pursuant to section 364(c)(1) of the Bankruptcy Code) to the DIP Agent, for the benefit of the DIP Secured Parties, having recourse to all prepetition and postpetition property of the DIP Debtors' estates, now owned or hereafter acquired, including, solely upon entry of a Final Order granting such relief, proceeds of Avoidance Actions (as defined below), whether received by judgment, settlement or otherwise, subject to the Carve-Out and the "Excluded Assets" (as defined in the DIP Security Agreement);

(4)      authorization for the DIP Debtors' use of cash collateral, as such term is defined in section 363(a) of the Bankruptcy Code (but excluding any cash collateral subject to Permitted Prior Senior Liens) ("**Cash Collateral**") in accordance with the terms and conditions set forth in this Interim Order and the DIP Credit Agreement;

(5)      authorization to provide adequate protection of the liens and security interests granted by the DIP Debtors for the benefit of the prepetition secured lenders to secure the obligations under the First Lien Credit Agreement, dated as of June 30, 2016 (as amended by the *Limited Waiver and First Amendment to First Lien Credit Agreement* dated as of April 26, 2019, the *Second Amendment to First Lien Credit Agreement and Extension to Limited Waiver Agreement* dated as of August 15, 2019, the *Forbearance Agreement and Second Extension to Limited Waiver Agreement* dated as of September 9, 2019, the *Amendment No. 1 to Forbearance Agreement and Second Extension to Limited Waiver Agreement* dated October 7, 2019, the *Amendment No. 2 to Forbearance Agreement and Second Extension to Limited Waiver Agreement* dated October 7, 2019, and the *Amendment No. 3 to Forbearance Agreement and Second Extension to Limited Waiver Agreement* dated November 26, 2019, and as further amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "**Prepetition First Lien Credit Agreement**"), by and among High Ridge Brands Co., as borrower, HRB Buyer, Inc. and the other DIP Debtors as guarantors, BMO Harris Bank N.A., as administrative agent (the "**Prepetition Agent**"), and the lenders party thereto (the "**Prepetition First Lien Lenders**," and together with the Prepetition Agent, the "**Prepetition First Lien Secured Parties**"), pursuant to the Prepetition First Lien Security Documents (as defined below) and all collateral and ancillary documents executed or delivered in connection therewith (collectively, with the Prepetition First Lien Credit Agreement and the Prepetition First

Lien Security Documents, the "**Prepetition First Lien Loan Documents**") and as more fully set forth in this Interim Order;

(6)      subject to entry of a Final Order granting such relief, the waiver of any right to surcharge the Prepetition First Lien Collateral pursuant to section 506(c) of the Bankruptcy Code;

(7)      the scheduling of a final hearing (the "**Final Hearing**") on the Motion no later than 30 days after the entry of this Interim Order, to consider entry of a Final Order granting the relief requested in the Motion on a final basis and approving the form of notice with respect to the Final Order;

(8)      modification of the automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to permit the (i) Debtors, (ii) DIP Agent and DIP Lenders, and (iii) Prepetition First Lien Secured Parties (defined below) to implement the terms of this Interim Order; and

(9)      waiver of any applicable stay (including under Bankruptcy Rule 6004) and provision for immediate effectiveness of this Interim Order; and

(10)     authorizing the use of proceeds of the DIP Facility extended to the DIP Debtors as provided in the DIP Loan Documents and consistent with the Approved Budget (as defined below) and to allow a "roll-up" of Prepetition First Lien Obligations outstanding under the Prepetition First Lien Credit Agreement pursuant to the procedures set forth below.

An interim hearing ("**Interim Hearing**") having been held by this Court on December 19, 2019; and this Court having found that notice of the Motion and Interim Hearing was provided by the Debtors as set forth in Paragraph C below, and this Court having considered all the pleadings filed with this Court; and having overruled all unresolved objections (if any) to the

relief granted in this Interim Order; and upon the record made by the Debtors at the Interim Hearing, and after due deliberation and consideration and good and sufficient cause appearing therefor:

**THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS[3]:**

A.    **Petition Date**. On December 18, 2019 (the "**Petition Date**"), each of the Debtors filed a voluntary petition with this Court commencing the Chapter 11 Cases. The Debtors are continuing to operate their respective businesses and manage their respective properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B.    **Jurisdiction; Venue**. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105, 361, 362, 363(c)(2), 363(e), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 503, 506(c), and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014.

C.    **Notice**. The Interim Hearing was held pursuant to the authorization of Bankruptcy Rule 4001. Notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtors, whether by facsimile, electronic mail, overnight courier or hand delivery, on December 18, 2019, to certain parties-in-interest, including: (i) the Office of the United States Trustee for the District of Delaware, (the "**U.S. Trustee**") (ii) the 30 largest non-insider unsecured creditors of the Debtors on a consolidated basis, (iii) BMO Harris Bank N.A., as DIP Agent and Prepetition Agent, (iv) the Internal Revenue Service, and (v) the United States

---

[3] Findings of fact shall be construed as conclusions of law, and conclusions of law be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

Attorney for the District of Delaware. Such notice of the Motion, the relief requested therein, and the Interim Hearing was made in accordance with Bankruptcy Rule 4001(b), (c) and (d) and the Local Rules.

      D.    **Debtors' Stipulations With Respect to Prepetition Obligations**. Subject to the limitations described below in Paragraph 17, the Debtors hereby admit, acknowledge, agree and stipulate that:

      (i)    As of the Petition Date, the DIP Debtors were truly and justly indebted to the Prepetition First Lien Secured Parties, without defense, counterclaim or offset of any kind, in the aggregate principal amount of $50,000,000 in respect of the revolving loans made under the Prepetition First Lien Credit Agreement (the "Prepetition Revolving Loans") and in the aggregate principal amount of $213,400,000 in respect of the term loans made under the Prepetition First Lien Credit Agreement (the "Prepetition Term Loans" and, together with the Prepetition Revolving Loans, the "Prepetition First Lien Loans"), *plus* accrued and unpaid interest with respect thereto and any additional fees, costs and expenses (including any fees and expenses of attorneys, financial advisors, and other professionals that are chargeable or reimbursable under the Prepetition First Lien Loan Documents) due under the Prepetition First Lien Credit Agreement and the other Prepetition First Lien Loan Documents (collectively, together with all other obligations of the obligors arising under the Prepetition First Lien Loan Documents (including, without limitation, the "Obligations" as defined in the Prepetition First Lien Credit Agreement), the "Prepetition First Lien Obligations");

      (ii)    Pursuant to that certain First Lien Pledge and Security Agreement, dated as of June 30, 2016, the mortgages, and any other document, agreement or other

25351521.8

instrument executed and delivered by a Prepetition First Lien Loan Party granting a lien on any of its property to secure payment of the Prepetition First Lien Obligations (as amended, restated, supplemented or otherwise modified from time to time, collectively, the "**Prepetition First Lien Security Documents**"), the DIP Debtors granted to and/or for the benefit of the Prepetition First Lien Secured Parties first priority (subject only to First Lien Permitted Liens), valid, perfected and enforceable security interests and liens (the "**Prepetition FL Liens**") in and on all Collateral (as defined in the Prepetition First Lien Credit Agreement, the "**Prepetition First Lien Collateral**");

(iii)    (a) The Prepetition First Lien Obligations constitute legal, valid and binding obligations of the DIP Debtors; (b) no offsets, defenses or counterclaims to the Prepetition First Lien Obligations exist; (c) no portion of the Prepetition First Lien Obligations is subject to avoidance, disallowance, reduction or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (d) the Prepetition First Lien Loan Documents are valid and enforceable by the Prepetition Agent for the benefit of the Prepetition First Lien Secured Parties against each of the applicable DIP Debtors in accordance with their terms; (e) the liens and security interests of the Prepetition First Lien Secured Parties constitute valid, binding, enforceable and perfected liens in and to the Prepetition First Lien Collateral having the priority set forth in the Prepetition First Lien Loan Documents and subject and subordinate only to First Lien Permitted Liens;[4] (f) the Prepetition First Lien Obligations constitute allowed secured claims against the applicable DIP Debtors' estates; and (g) no claim of or cause of action held by the Debtors exists against the Prepetition Agent, any of the Prepetition First Lien Lenders or

---

[4] Nothing shall prejudice the rights of any party-in-interest including, but not limited to, the Debtors, the Prepetition Agent and the Prepetition First Lien Lenders to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any such liens and/or security interests.

any of their respective agents, in each case in their capacity as such, whether arising under applicable state or federal law, arising out of, based upon or related to, in whole or in part, the Prepetition First Lien Obligations or their prepetition relationship with any Debtor or any affiliate thereof relating to any of the Prepetition First Lien Loan Documents or any transaction contemplated thereby; and

(iv)    all of Debtors' cash, including any cash in all deposit accounts and collection accounts, wherever located, comprising proceeds of the Prepetition First Lien Collateral, constitutes Cash Collateral of the Prepetition First Lien Secured Parties.

E.    **Budget**. As condition to entry into the DIP Credit Agreement, the extension of credit under the DIP Facility and their consent to use Cash Collateral, the DIP Secured Parties and the Prepetition First Lien Secured Parties require, and the DIP Debtors have agreed, that proceeds of the DIP Facility and Cash Collateral shall be used, in each case in a manner consistent with the terms and conditions of this Interim Order and the DIP Loan Documents and in accordance with an Approved Budget, subject to certain variances, as set forth in paragraph 24 hereof.

F.    **Immediate Need for Funding**. Based upon the pleadings and proceedings of record in the Chapter 11 Cases, the DIP Debtors do not have sufficient available sources of working capital and financing to carry on the operation of their businesses without the DIP Facility and authorized use of Cash Collateral. As a result of the DIP Debtors' financial condition, the use of Cash Collateral alone will be insufficient to meet the DIP Debtors' immediate postpetition liquidity needs. The DIP Debtors' ability to maintain business relationships with their vendors, suppliers and distributors, pay their employees, pursue strategic alternatives such as a disposition and otherwise finance their operations prior to the

consummation of any such strategy is essential to the DIP Debtors' continued viability and to their ability to maximize the value of their assets. In the absence of the DIP Facility and the authorization by this Court to use Cash Collateral, the DIP Debtors' businesses and estates would suffer immediate and irreparable harm, including, without limitation, the potential cessation of substantially all of their operations.

G. **No Credit on More Favorable Terms**. Based upon the pleadings and proceedings of record in the Chapter 11 Cases, the DIP Debtors are unable to obtain sufficient interim and long-term financing from sources other than the DIP Lenders on terms more favorable than under the DIP Facility and the DIP Loan Documents, and are not able to obtain unsecured credit allowable as an administrative expense under either section 364(b) or section 503(b)(1) of the Bankruptcy Code. The DIP Debtors are also unable to obtain superpriority unsecured or secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code. The best and only available source of secured credit available to the Debtors is the DIP Facility. Financing on a postpetition basis is not otherwise available without the DIP Debtors (i) granting to the DIP Agent and the DIP Lenders, subject to the Carve-Out, (a) the DIP Superpriority Claims (as defined below) and (b) the DIP Liens (as defined below) in the DIP Collateral (as defined below), in each case under the terms and conditions set forth in this Interim Order and the DIP Loan Documents and (ii) providing the Prepetition First Lien Secured Parties the adequate protection as provided herein.

H. **Reasonable; Good Faith**. The DIP Lenders have indicated a willingness to provide postpetition secured financing to the DIP Debtors but solely on the terms and conditions set forth in this Interim Order and the DIP Loan Documents. After considering all of their alternatives, the DIP Debtors have concluded, in an exercise of their sound business judgment,

that the DIP Facility to be provided by the DIP Lenders and the consent to use the Cash Collateral to be provided by the Prepetition Agent, on behalf of the Prepetition First Lien Secured Parties, represent the best financing presently available to the Debtors. Based upon the pleadings and proceedings of record in the Chapter 11 Cases, (i) the terms and conditions of the DIP Facility are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and are supported by reasonably equivalent value and fair consideration, (ii) the DIP Facility has been negotiated in good faith and at arm's length among the DIP Debtors, the DIP Agent and the DIP Lenders and (iii) any credit extended, loans made and other financial accommodations extended to the DIP Debtors by the DIP Lenders have been extended, issued or made, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code.

I.    **Consent of Prepetition First Lien Secured Parties**. The Prepetition First Lien Secured Parties have consented to the DIP Debtors' use of Cash Collateral and the other Prepetition First Lien Collateral, and the DIP Debtors' entry into the DIP Loan Documents solely in accordance with and subject to the terms and conditions in this Interim Order and the DIP Loan Documents.

J.    **Adequate Protection**. The Prepetition First Lien Secured Parties are entitled to the adequate protection provided in this Interim Order as and to the extent set forth herein pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code. Based on the Motion and on the record presented to the Court, the terms of the proposed adequate protection arrangements and of the use of the Prepetition First Lien Collateral are fair and reasonable, reflect the Debtors' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of the Prepetition First Lien Collateral; provided that nothing in this

Interim Order of the other DIP Loan Documents shall (a) be construed as the affirmative consent by any of the Prepetition First Lien Secured Parties for the use of Cash Collateral other than on the terms set forth in this Interim Order and in the context of the DIP Financing authorized by this Interim Order, (b) be construed as a consent by any party to the terms of any other financing or any other lien encumbering the Prepetition First Lien Collateral (whether junior or senior) or (c) prejudice, limit or otherwise impair the rights of any of the Prepetition First Lien Secured Parties to seek new, different or additional adequate protection for any diminution in value of their interests in the Prepetition First Lien Collateral from and after the Petition Date or assert the interests of any of the Prepetition First Lien Secured Parties, and the rights of any other party in interest to object to such relief are hereby preserved.

K.  **Good Cause Shown; Best Interest**.  The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and Local Rule 4001-2(b).  Absent entry of this Interim Order, the Debtors' businesses, properties and estates will be immediately and irreparably harmed.  This Court concludes that good cause has been shown and that entry of this Interim Order is in the best interest of the Debtors' respective estates and creditors as its implementation will, among other things, allow for the continued operation of the Debtors' existing businesses and enhance the Debtors' prospects for either a successful reorganization or the sale of all or substantially all of their assets pursuant to any subsequent orders of this Court.  Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).

L.  **No Liability to Third Parties**.  Subject to Paragraph 17 and entry of a Final Order, the Debtors stipulate and the Court finds that in making decisions to advance loans to the DIP Debtors, in administering any loans, in accepting the Initial Approved Budget or any future

Supplemental Approved Budget or in taking any other actions permitted by this Interim Order or the DIP Loan Documents in their respective capacities as DIP Lenders or DIP Agent, none of the DIP Secured Parties shall be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors.

M.     **Section 552**.  Subject to the entry of a Final Order granting such relief and in light of the subordination of their Prepetition FL Liens to the Carve-Out and the DIP Liens, the Prepetition First Lien Secured Parties are entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception shall not apply to any of the Prepetition First Lien Secured Parties with respect to the proceeds, products, rents, issues or profits of any of the Prepetition First Lien Collateral.  Subject to the entry of a Final Order granting such relief, the Debtors shall be deemed to have irrevocably waived, and to have agreed not to assert, any claim or right under sections 552 or 726 of the Bankruptcy Code seeking to avoid the imposition of the Prepetition FL Liens or the Adequate Protection Liens (as defined below) on any property acquired by any of the DIP Debtors or any of their estates.

N.     **Findings Regarding Corporate Authority**. Each DIP Debtor has all requisite corporate or entity power and authority to execute and deliver the DIP Loan Documents to which it is a party and to perform its obligations thereunder.

O.     **Roll-Up Obligations**.  The Roll-Up Loans shall be issued on a 1:1 basis for every dollar of (x) the Initial Committed Amount actually disbursed as DIP Term Loans after entry of this Interim Order, and (y) the remaining amount of the DIP TL Facility actually disbursed as DIP Term Loans after entry of the Final DIP Order, in each case in exchange for Prepetition First Lien Obligations of the applicable DIP Lender (or its affiliate, as applicable), which Prepetition

First Lien Obligations shall be deemed to be refinanced and discharged by such Roll-Up Loans. The Prepetition First Lien Lenders would not otherwise consent to the use of their Cash Collateral or the subordination of their liens to the DIP Liens, and the DIP Agent and the DIP Lenders would not be willing to provide the DIP Facility or extend credit to the DIP Debtors thereunder without the inclusion of the Roll-Up Facility. The Roll-Up Loans shall be subject to claw back upon the successful challenge, by entry of a final, non-appealable judgment or order, of the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to the Prepetition First Lien Loan Documents or Prepetition First Lien Obligations,

Based on the foregoing, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.    **Approval of Interim Order**.    The Motion is approved on the terms and conditions set forth in this Interim Order. Any objections to the relief granted in this Interim Order that have not previously been withdrawn are hereby overruled. This Interim Order shall become effective immediately upon its entry.

2.    **Approval of DIP Loan Documents; Authority Thereunder**. The DIP Debtors are hereby authorized to enter into the DIP Loan Documents, including the DIP Credit Agreement, and such additional documents, instruments and agreements as may be reasonably required or requested by the DIP Agent and the DIP Lenders to implement the terms or effectuate the purposes of this Interim Order. The DIP Debtors are authorized to comply with and perform all of the terms and conditions contained in the DIP Loan Documents, and to repay amounts borrowed, together with interest and fees thereon, as well as any other outstanding DIP

Obligations to the DIP Lenders in accordance with and subject to the terms and conditions set forth in the DIP Loan Documents and this Interim Order.

3.      **Authorization to Borrow DIP Facility Loans**.   Upon finalizing and executing the DIP Credit Agreement and the other DIP Loan Documents, the DIP Borrowers are immediately authorized to borrow from the DIP Lenders, and the DIP Guarantor is immediately authorized to guaranty, an initial draw under the DIP Facility of a principal amount of up to $12.5 million of DIP Term Loans and $12.5 million of Roll-Up Loans, subject to and in accordance with the terms of this Interim Order and the DIP Credit Agreement.

4.      **Authorization to Use Cash Collateral**.   The DIP Debtors are hereby authorized to use all Cash Collateral solely in accordance with the terms of the DIP Loan Documents and subject to the terms and conditions of this Interim Order.

5.      **Collections**.   From the Petition Date until the DIP Obligations have been paid in full in cash, all cash receipts, Cash Collateral and all proceeds from the sale or other disposition of, or other revenue of any kind attributable to, any DIP Collateral that is now in, or shall hereafter come into, the possession or control of any of the Debtors, or to which any of the Debtors is now or shall hereafter become entitled, shall be (i) subject to the DIP Liens and the Adequate Protection Liens (and shall be treated in accordance with this Interim Order and the DIP Credit Agreement) and (ii) to the extent related to or arising from or in connection with Prepetition First Lien Collateral, promptly deposited only into a controlled account.

6.      **Perfection in Cash**.   The DIP Agent shall enjoy the benefit of all deposit account control agreements.   Notwithstanding and without minimizing the force of the foregoing, the DIP Debtors are authorized to enter into, and cause the financial institutions servicing the DIP Debtors' deposit accounts to enter into, such deposit account control agreements and other

25351521.8

15

collateral agreements with the DIP Agent and such financial institutions as the DIP Agent may reasonably require, or alternatively, the DIP Agent shall be entitled to enjoy the benefit of all control agreements to which the DIP Debtor is a party, as set forth above, without the need to enter into any such new agreements, provided, however, that any such agreements must comply with the *Order Pursuant to Sections 105(a), 345, 363, 364, 503(b), 1107(a), and 1108 of the Bankruptcy Code, Bankruptcy Rules 2015, 6003, and 6004, and Local Rule 2015-2, (i) Authorizing and Approving the Debtors' continued use of their Cash Management System; (ii) Granting the Debtors a Waiver of the U.S. Trustee Guidelines; (iii) Authorizing, but not Directing, the Debtors, in their Sole Discretion, to Pay or Otherwise Satisfy Prepetition Payment Processing Fees; (iv) Waiving the Requirements of Section 345(b) of the Bankruptcy Code with Respect to the Debtors' Deposit Practices on an Interim basis; and (v) Granting Administrative Expense Status to Post-petition Intercompany Claims.*

7.    **Interest on DIP Facility Loans**.  The rate of interest to be charged for the DIP Facility Loans and any other extensions of credit to the DIP Debtors pursuant to the DIP Credit Agreement shall be the rates set forth in the DIP Credit Agreement and shall be payable at the times set forth in the DIP Credit Agreement.

8.    **Payment of DIP Fees and Expenses**.  The DIP Debtors are authorized to pay (i) all fees when due under the DIP Credit Agreement in the amounts set forth in the DIP Credit Agreement and (ii) all reasonable and documented costs, expenses and any other fees or other amounts payable under the terms of the DIP Loan Documents (including the reasonable, documented, out-of-pocket fees, costs and expenses of Winston & Strawn LLP, Womble Bond Dickinson, and Carl Marks Advisory Group LLC), whether incurred before or after the Petition Date.  Subject to the review procedures set forth below, none of such fees, costs and expenses

shall be subject to Court approval or U.S. Trustee guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court.  Copies of any invoices of legal counsel with respect to such fees, expenses and costs shall be provided (in summary form and redacted, as necessary, to protect any applicable privilege) to the Debtors, their counsel, counsel to the Committee (defined below), if any, and the U.S. Trustee, each of which shall have ten (10) days from the date of such notice within which to object in writing to such payment, and any such objection shall be subject to resolution by the Court.  Pending such resolution, the undisputed portion of any such invoice shall be paid promptly by the DIP Debtors after such ten (10) day period.  In addition, the DIP Debtors are hereby authorized to indemnify the DIP Agent and the other DIP Secured Parties (and each of their respective directors, officers, employees, agents, representatives, attorneys, consultants, advisors and controlling persons) against any liability arising in connection with the DIP Loan Documents, to the extent set forth in the DIP Loan Documents.  All such unpaid fees, costs, expenses and indemnities of the DIP Agent and DIP Lenders shall (i) constitute DIP Obligations, (ii) be secured by the DIP Collateral, and (iii) be afforded all of the priorities and protections afforded to DIP Obligations under this Interim Order and the DIP Loan Documents.

9.    **Validity of DIP Loan Documents**.  Upon execution and delivery of the DIP Loan Documents, the DIP Loan Documents shall constitute, and are hereby deemed to be, the legal, valid and binding obligations of the DIP Debtors, enforceable against each DIP Debtor in accordance with the terms thereof for all purposes during the Chapter 11 Cases, in any subsequently converted case of any DIP Debtor under chapter 7 of the Bankruptcy Code, or after dismissal of any of the Chapter 11 Cases.  Any DIP Facility Loans advanced under the DIP Credit Agreement pursuant to this Interim Order will be made by the DIP Lenders only for the

purposes of funding post-petition administrative expenses, the Debtors' working capital and the Debtors' sale efforts to the extent permitted under the DIP Credit Agreement, and paying such other amounts as are required or permitted to be paid pursuant to the DIP Credit Agreement, this Interim Order and any other orders of this Court, including, without limitation, the fees, costs, expenses and indemnities described in Paragraph 8 hereof, all subject to and solely in accordance with the Approved Budget. No obligation, payment, transfer or grant of security under the DIP Loan Documents or this Interim Order shall be stayed, restrained, voided, voidable or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law, or subject to any defense, reduction, setoff, recoupment or counterclaim. Except set forth in this Interim Order and the Final Order, no other superpriority claims shall be granted or allowed in these Chapter 11 Cases.

10. **DIP Superpriority Claims**. In accordance with section 364(c)(1) of the Bankruptcy Code, the DIP Obligations shall constitute superpriority administrative expense claims (the "DIP Superpriority Claims") against each of the DIP Debtors with priority in payment over any and all administrative expenses, adequate protection claims, diminution claims and all other claims against the DIP Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, any and all administrative expenses or other claims of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, but not limited to, sections 105, 326, 328, 330, 331, 503(b), 506(c) (subject to, and upon entry of, a Final Order granting such relief), 507(a), 507(b), 726, 1113 and 1114 of the Bankruptcy Code or otherwise, including those resulting from the conversion of any of the Chapter 11 Cases pursuant to section 1112 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment; provided, however,

that the DIP Superpriority Claims shall be subject to the Carve-Out. The DIP Superpriority Claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, shall be against each DIP Debtor on a joint and several basis, and shall have recourse to all prepetition and postpetition property of the DIP Debtors' estates, now owned or hereafter acquired, including, solely upon entry of a Final Order granting such relief, proceeds of Avoidance Actions (as defined below), whether received by judgment, settlement or otherwise, subject to the Carve-Out and the "Excluded Assets" (as defined in the DIP Security Agreement).

11.    **DIP Liens**. As security for the DIP Obligations, the DIP Agent on behalf and for the benefit of the DIP Secured Parties is hereby granted (effective upon the date of this Interim Order, without the necessity of the execution by the Debtors or the filing or recordation of security agreements, lockbox or control agreements, financing statements, or any other instruments or otherwise) valid, binding and fully-perfected security interests in and liens upon (the "DIP Liens") all present and after-acquired property of the DIP Debtors of any nature whatsoever (including, without limitation, "Collateral," as defined in the DIP Credit Agreement), other than the "Excluded Assets" (as defined in the DIP Security Agreement) but including, without limitation, all Accounts, Chattel Paper, Deposit Accounts, Documents, Equipment, General Intangibles, Instruments, Intellectual Property, Inventory, Investment Property, Letter-of-Credit Rights, Money, all Commercial Tort Claims, all books and records (regardless of medium) pertaining to the Collateral, all Supporting Obligations, all other Goods and personal property of such Grantor arising under the laws of the United States, whether tangible or intangible and wherever located, all property of any Grantor held by the Prepetition Agent or any First Lien Lender as of the Closing Date; and, subject to entry of a Final Order granting such

25351521.8

relief, all proceeds of Avoidance Actions of the DIP Debtors or their estates (collectively with all proceeds and products of any or all of the foregoing, the "**DIP Collateral**"), which DIP Liens shall consist of:

(a)　　Liens Priming Liens.　Pursuant to section 364(d)(1) of the Bankruptcy Code, a first priority, priming security interest in and lien on all encumbered property of the DIP Debtors and their estates, which shall be senior to any existing liens or claims, subject and subordinated only to the Carve-Out and Permitted Prior Senior Liens.

(b)　　Liens Junior to Certain Other Liens.　Pursuant to section 364(c)(3) of the Bankruptcy Code, a junior, perfected lien and security interest upon all of the DIP Debtors' right, title and interest in, to and under property of the DIP Debtors and their estates, whether now existing or hereafter acquired, subject and subordinated only to the Carve-Out, the DIP Liens, the Prepetition FL Liens, and the Permitted Prior Senior Liens.

(c)　　First Priority Lien on Unencumbered Property.　Pursuant to section 364(c)(2) of the Bankruptcy Code, a continuing, enforceable, first priority, fully-perfected lien and security interest upon all of the DIP Debtors' right, title and interest in, to, and under all property of the DIP Debtors and their estates that was not, as of the Petition Date, encumbered by a validly perfected, enforceable, and nonavoidable security interest or lien (collectively, the "**Unencumbered Property**"), subject to the Carve-Out. Subject only to and effective upon entry of a Final Order granting such relief, Unencumbered Property shall also include the proceeds of estate causes of action under chapter 5 of the Bankruptcy Code and any other avoidance actions under the Bankruptcy Code, whether now existing or hereafter acquired or arising and whether pursuant to federal law or applicable state law, and all proceeds thereof, recoveries related thereto,

and property received thereby, whether by judgment, settlement, or otherwise (collectively, "**Avoidance Actions**").

(d)    Liens Senior to Certain Other Liens. The DIP Liens shall not be subject or subordinate to (i) subject to entry of a Final Order granting such relief, any lien or security interest that is avoidable for the benefit of the DIP Debtors and their estates under section 551 of the Bankruptcy Code or (ii) any intercompany or affiliate liens among the DIP Debtors not permitted under the DIP Loan Documents.

12.    **Prepetition First Lien Secured Parties' Adequate Protection**.    Each of the Prepetition First Lien Secured Parties is entitled to adequate protection of its interests in the Prepetition First Lien Collateral on account of and in equal amount to the diminution in the value thereof as a result of (a) the provisions of this Interim Order granting priming liens on such Prepetition First Lien Collateral to the DIP Agent for the benefit of the DIP Secured Parties; (b) the authorization of the use of Cash Collateral and other Prepetition First Lien Collateral; (c) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code; and/or (d) otherwise, pursuant to sections 361(a), 363(c) and 364(d)(1) of the Bankruptcy Code (collectively, the "**Adequate Protection Claims**"). The Prepetition Agent, on behalf and for the benefit of the Prepetition First Lien Lenders, is hereby granted the following (collectively, the "**Adequate Protection Obligations**"):

(a)    Adequate Protection Liens.    Legal, valid, binding, enforceable, unavoidable and fully perfected replacement liens and security interests in postpetition DIP Collateral (the "**Adequate Protection Liens**") in the amount sufficient to secure such Prepetition Secured Party's Adequate Protection Claims, which shall be (i) junior only to the DIP Liens, and the Permitted Prior Senior Liens, and (ii) subject to the Carve-

Out, which Adequate Protection Liens shall rank in the same relative priority and right as do the respective security interests and liens in respect of the Prepetition Credit Agreement as of the Petition Date and not be subject to subordination or avoidance, for all purposes in the Chapter 11 Cases. Except as otherwise set forth in this Paragraph 12 or otherwise in this Interim Order, the Adequate Protection Liens shall not be subordinated to or be made *pari passu* with any other lien under section 364(d) of the Bankruptcy Code or otherwise. The Adequate Protection Liens shall be deemed to be perfected automatically upon the entry of this Interim Order, without the need for (x) filing any UCC-1 financing statement, state or federal notice, or other similar instrument or document in any state or public record or office, (y) taking possession or control of any collateral, or (z) further action of any kind (including entry into any security agreements, pledge agreements, control agreements, lockbox agreements, or escrow agreements); provided, however, that, upon the reasonable request of the Prepetition Agent, the DIP Debtors shall enter into any such agreement, and, if the Prepetition Agent determines, in its sole discretion, to file any financing statements, notice of liens or similar instruments, the Debtors will reasonably cooperate and assist in such filings and the automatic stay shall be lifted without the need for further order of this Court to allow such filings. Without limiting the foregoing, but subject and subordinate to the rights of the DIP Secured Parties and the holders of any Permitted Prior Senior Liens, in respect of the Adequate Protection Liens, the Prepetition First Lien Secured Parties shall enjoy the benefit of all deposit account control agreements, and escrow agreements to which any DIP Debtor is a party;

(b)     Adequate Protection Superpriority Claims.  Subject to the Carve-Out, the Prepetition Agent, on behalf and for the benefit of the Prepetition First Lien Secured Parties, is hereby granted a superpriority administrative expense claim (the "**Adequate Protection Superpriority Claim**") in the amount of its Adequate Protection Claim under sections 503 and 507 of the Bankruptcy Code against the DIP Debtors' estates, including, subject to and upon entry of a Final Order granting such relief, proceeds of Avoidance Actions, which Adequate Protection Superpriority Claim, if any, shall have priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, but not limited to, Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 506(c) (subject to and effective upon entry of a Final Order granting such relief), 507(a), 507(b), 726, 1113 and 1114, or otherwise and including those resulting from the conversion of any of the Chapter 11 Cases pursuant to section 1112 of the Bankruptcy Code; provided, however, that at all times while such claim is in full force and effect pursuant to this Interim Order, the Adequate Protection Superpriority Claim shall be junior in all respects to the Carve-Out and the DIP Superpriority Claims; further provided, the Adequate Protection Superpriority Claim shall respectively among the Prepetition Secured Lenders rank in the same right and priority as do their respective claims with respect to the Prepetition First Lien Credit Agreement as of the Petition Date.

(c)     Adequate Protection Payments.  Subject to the Carve-Out, as further adequate protection, the DIP Debtors are authorized to provide adequate protection to the Prepetition First Lien Secured Parties in the form of payment in cash (and as to fees and expenses, without the need for the filing of a formal fee application) of the reasonable,

documented, prepetition and postpetition out-of-pocket fees, costs and expenses incurred or accrued by the Prepetition Agent for legal counsel and financial advisors retained by the Prepetition Agent (which shall be limited to the reasonable and documented out-of-pocket fees and expenses of one primary legal counsel (which shall be Winston & Strawn LLP), one local counsel in each applicable material jurisdiction (including, without limitation, Delaware (which local counsel shall be Womble Bond Dickinson) and one financial advisor (which shall be Carl Marks Advisory Group LLC) for the Prepetition First Lien Credit Lenders as a group), promptly upon receipt of written invoices therefor, provided that copies of any invoices (redacted, as necessary, to protect any applicable privilege) shall be provided to the Debtors, their counsel, counsel to the Committee, if any, and the U.S. Trustee, each of which shall have ten (10) days from the date of such notice within which to object in writing to such payment, and any such objection shall be subject to resolution by the Court; <u>provided</u> that any fees, costs and expenses paid as adequate protection for the Prepetition First Lien Secured Parties shall be recharacterized as payments of principal if the Prepetition First Lien Secured Parties are later determined to be undersecured.  Pending such resolution, the undisputed portion of any such invoice shall be paid promptly by the Debtors after such ten (10) day period.

13.    **No Waiver of Prepetition First Lien Credit Agreement Provisions; Reservation of Rights**.  Except as otherwise specifically provided in this Interim Order, nothing contained in this Interim Order shall be deemed a waiver or constitute a consent to the modification of any provision contained in the Prepetition First Lien Credit Agreement by the Prepetition First Lien Secured Parties, including, but not limited to, the incurrence or issuance of

any indebtedness by the DIP Debtors, the incurrence of any lien in connection therewith or the making of any payment by the DIP Debtors.

14.     **Rights of Access and Information**.  Without limiting the rights of access and information afforded the DIP Secured Parties under the DIP Loan Documents, but subject to applicable state law, the DIP Debtors hereby are authorized to afford the representatives, agents, employees, attorneys, financial advisors, and investment bankers of the DIP Secured Parties reasonable access to the DIP Debtors' premises and their books and records in accordance with the DIP Loan Documents and are authorized to reasonably cooperate, consult with, and provide to such persons all such information as may reasonably be requested in accordance with the DIP Loan Documents.  In addition, the DIP Debtors may authorize their independent certified public accountants, financial advisors, investment bankers, and consultants to cooperate, consult with, and provide to the DIP Secured Parties all such information as may be reasonably requested in accordance with the DIP Loan Documents with respect to the business, results of operations and financial condition of any of the Debtors.

15.     **Carve-Out**.

(a)     The DIP Liens, DIP Superpriority Claims, Adequate Protection Superpriority Claims, Adequate Protection Liens, and Prepetition FL Liens shall be subject to the payment of: (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under sections 156(c) and 1930(a) of title 28 of the United State Code (plus any applicable interest at the statutory rate), (ii) prior to the delivery (by email or otherwise) by the DIP Agent of a written notice to the Debtors, the Debtors' counsel, the U.S. Trustee, and lead counsel for the official committee of creditors holding unsecured claims appointed in these Chapter 11 Cases, if

any, pursuant to section 1102 of the Bankruptcy Code (the "**Committee**"), of the occurrence and continuance of an Event of Default (the "**Carve-Out Notice**"), the fees, costs and expenses accrued or incurred by any person or firm retained by the Debtors or any Committee as an estate professional (collectively, the "**Professionals**") and payable under sections 328, 330 and/or 331 of the Bankruptcy Code, to the extent allowed by an order of this Court (whether allowed prior to or after the delivery of the Carve-Out Notice) in an aggregate amount on a line item basis not exceeding the budgeted amounts for such unpaid professional fees and disbursements as reflected in the Approved Budget; (iii) following the delivery of the Carve-Out Notice, an aggregate amount not to exceed the lesser of (1) the amount of such unpaid Professionals' fees and disbursements outstanding and incurred prior to the occurrence of such Event of Default and (2) the budgeted amount of Professional fees and disbursements set forth in the Approved Budget (other than Transaction Payments (as defined below)) through the date of the delivery of the Carve-Out Notice but only to the extent not previously disbursed in accordance with the Approved Budget, plus, in each case $500,000; (d) fees of any investment banker earned in conjunction with the consummation of a transaction or transactions as set forth in its respective engagement letters with the applicable Debtors, provided that such amounts may be paid out of the collateral of the DIP Lenders and Prepetition First Lien Lenders only to the extent such fees were (1) actually earned pursuant to the terms of the respective engagement letters with the Debtors in effect as of the date of the DIP Credit Agreement (or as amended with the consent of the DIP Lenders and the Prepetition First Lien Lenders), (2) approved by the Bankruptcy Court, and (3) earned in connection with transactions consented to by the DIP Lenders and

25351521.8

Prepetition First Lien Lenders required to approve such transaction or transactions in accordance with the terms of the DIP Loan Documents and the Prepetition First Lien Credit Agreement, or, to the extent such transaction occurs in connection with an Acceptable Plan, the class of creditors consisting exclusively of the Prepetition First Lien Lenders has voted to accept the treatment provided in such Acceptable Plan (collectively, all such fees are referred to as the "**Transaction Payments**"); and (e) all reasonable and documented fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code not to exceed $25,000 (collectively, the "**Carve-Out**"); provided, however, that the Carve-Out shall be applied in accordance with paragraph 16 of this Interim Order.  So long as a Carve-Out Notice has not been delivered: (i) the Debtors shall be permitted to pay administrative expenses allowed and payable under sections 328, 330 and/or 331 of the Bankruptcy Code, as the same may become due and payable; and (ii) such payments shall not be applied to reduce the Carve-Out (to the extent such payments are ultimately allowed by the Court); provided, however, that following a Carve-Out Notice any amounts actually paid to Professionals on account of post-Carve-Out Notice fees and disbursements by any means will reduce the Carve-Out on a dollar-for-dollar basis.  Notwithstanding the foregoing, nothing contained herein is intended to constitute, nor should be construed as consent to, the allowance of any Professional's fees, costs or expenses by any party and shall not affect the right of the Debtors, the DIP Agent, the DIP Lenders, the Prepetition First Lien Secured Parties, any Committee, the U.S. Trustee, or any other party-in-interest to object to the allowance and payment or any amounts incurred or requested.

(b)      Notwithstanding anything to the contrary herein or in the DIP Loan Documents, the Carve-Out shall be senior to the DIP Obligations, the DIP Superpriority Claims, the DIP Liens, the Adequate Protection Obligations, the Adequate Protection Liens and all other liens and claims granted under this Interim Order, the DIP Loan Documents, or otherwise securing or in respect of the DIP Obligations or the Adequate Protection Obligations.

(c)      The DIP Secured Parties and Prepetition First Lien Secured Parties shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Professionals, Committee, the U.S. Trustee or Clerk of the Bankruptcy Court (or of any other entity) incurred in connection with the Chapter 11 Cases or any successor case, and nothing in this Interim Order or otherwise shall be construed to obligate such parties in any way to pay such compensation to or to reimburse such expenses.

16.      **Limitation on Use of DIP Financing Proceeds and Collateral**.  No portion of the Carve-Out, DIP Facility, DIP Collateral, Prepetition First Lien Collateral or Cash Collateral shall include, apply to, or be available for any fees, costs or expenses incurred by any party, including the Debtors or any Committee, in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings, or other litigation against any of the DIP Secured Parties or the Prepetition First Lien Secured Parties, including, without limitation, (i) challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to the DIP Loan Documents, DIP Obligations, DIP Superpriority Claims or DIP Liens in respect thereof, (ii) challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to the Prepetition First Lien Loan Documents, Prepetition First Lien Obligations, Adequate Protection

Superpriority Claims or the Adequate Protection Liens of the Prepetition First Lien Secured Parties in respect thereof or (iii) asserting any claims or causes of action, including, without limitation, claims or actions to hinder or delay the DIP Agent's or DIP Lenders' assertion, enforcement or realization on the DIP Collateral in accordance with the DIP Loan Documents or this Interim Order; provided, however, that up to $25,000 of the proceeds of the DIP Facility or any proceeds of the DIP Collateral and/or the Carve-Out shall be made available, in the aggregate, to any Committee appointed in these Chapter 11 Cases to fund a reasonable investigation in respect of the validity, perfection, enforceability, priority, or extent of the Prepetition FL Liens and Prepetition First Lien Obligations.  Furthermore, none of the Carve-Out, DIP Collateral, Prepetition First Lien Collateral, Cash Collateral or any proceeds of the DIP Facility shall be used to prevent, hinder or delay the DIP Secured Parties from enforcing or realizing upon the DIP Collateral once an Event of Default has been determined by the Court to have occurred and to be continuing under the DIP Loan Documents or this Interim Order. Notwithstanding the foregoing, the DIP Debtors shall be permitted to contest the occurrence and continuance of an Event of Default in accordance with the terms and conditions of this Interim Order.

17.    **Investigation Rights**.  Any Committee shall have until the later of sixty (60) days from the date of the Committee's appointment (provided that such appointment occurs within seventy-five (75) days from the entry of this Interim Order) or seventy-five (75) days from the entry of this Interim Order, and all other non-debtor parties-in-interest (including a trustee, if appointed or elected prior to the Investigation Termination Date, as defined herein) shall have seventy-five (75) days from the entry of this Interim Order (each, as applicable and as may be extended by the Prepetition Agent or the Court, the "**Investigation Termination Date**") to

25351521.8

investigate the validity, perfection, enforceability, priority, and extent of the Prepetition FL Liens and the Prepetition First Lien Obligations, and to assert any other claims or causes of action against the Prepetition First Lien Secured Parties; provided, however, if a chapter 11 trustee or chapter 7 trustee is appointed, such trustee shall have thirty (30) days from the date of appointment or as otherwise ordered by the Court to assert any other claims or causes of action against the Prepetition First Lien Secured Parties.  If any Committee, or any non-Debtor party-in-interest hereafter granted authority and standing by this Court, determines that there may be a claim or cause of action against the Prepetition First Lien Secured Parties by the Investigation Termination Date, then such Committee, or other non-Debtor party-in-interest hereafter granted authority and standing by this Court, shall be permitted to file and prosecute an objection or claim related thereto (each, a "Challenge"), and shall have only until the applicable Investigation Termination Date to file such objection or claim (or otherwise initiate an appropriate action on behalf of the Debtors' estates) setting forth the basis of any such challenge, claim or cause of action; provided, however, that nothing contained in the DIP Loan Documents or this Interim Order shall be deemed to confer standing on any Committee or any other party-in-interest to commence a Challenge.  If a Challenge is not filed on or before the Investigation Termination Date, then, without further action by any party or any further order of this Court: (a) the agreements, acknowledgements and stipulations contained in Paragraph D of this Interim Order and its subparagraphs shall be deemed to be immediately and irrevocably binding on the DIP Debtors and the DIP Debtors' estates, any Committee and all parties-in-interest, and any and all successors-in-interest thereto shall thereafter be forever barred from bringing any Challenge; (b) the liens and security interests of the Prepetition First Lien Secured Parties shall be deemed to constitute valid, binding, enforceable and perfected liens and security interests not subject to

avoidance or disallowance pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (c) the Prepetition First Lien Obligations shall be deemed to be finally allowed claims for all purposes in the Chapter 11 Cases and any subsequent chapter 7 cases, in the amounts set forth in Paragraph D and its subparagraphs and shall not be subject to challenge by any party-in-interest as to validity, priority or otherwise; and (d) the DIP Debtors shall be deemed to have released, waived and discharged each of the Prepetition First Lien Secured Parties (in their prepetition capacities as such), together with their respective officers, directors, employees, agents, attorneys, professionals, affiliates, subsidiaries, assigns and/or successors, from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, the Prepetition First Lien Obligations or their prepetition relationship with such DIP Debtor or any affiliate thereof relating to any of the Prepetition First Lien Loan Documents or any transaction contemplated thereby, including, without limitation, any claims or defenses as to the extent, validity, priority, or enforceability of the Prepetition FL Liens or the Prepetition First Lien Obligations, any claims or defenses under chapter 5 of the Bankruptcy Code or any other causes of action.   The Prepetition Agent and Prepetition First Lien Lenders shall cooperate in all reasonable requests for information in order to assist any Committee or any other party in interest with standing in its investigation under this Paragraph 17.   Notwithstanding anything to the contrary herein: (a) if any such Challenge is timely commenced, the stipulations contained in Paragraph D of this Interim Order and its subparagraphs shall nonetheless remain binding on all parties-in-interest and preclusive except with respect to the party asserting the Challenge and to the extent that such stipulations are expressly and successfully challenged in such Challenge; and (b) the Prepetition First Lien Secured Parties reserve all of their rights to contest on any grounds any Challenge.   For the avoidance of doubt, any trustee appointed or elected in these cases shall,

until the Investigation Termination Date (and thereafter, if a Challenge is commenced on or prior

to the Investigation Termination Date, for the duration of any adversary proceeding or contested

matter commenced pursuant to this paragraph with respect to a Challenge (whether commenced

by such trustee or commenced by any other party-in-interest on behalf of the Debtors' estates)),

be deemed to be a party other than the Debtors and shall not, for purposes of such adversary

proceeding or contested matter, be bound by the acknowledgments, admissions, confirmations

and stipulations of the Debtors in this Order.

18.    **Protection of DIP Lenders' Rights**.  So long as there are any DIP Facility Loans

or DIP Obligations outstanding or the DIP Lenders have any outstanding commitments under the

DIP Credit Agreement, the Prepetition First Lien Secured Parties (i) shall not take any action to

foreclose upon or recover in connection with their respective liens and security interests, other

agreements, or operation of law of this Interim Order, or otherwise exercise remedies against any

DIP Collateral, except to the extent authorized herein or by any other order of this Court, (ii)

shall be deemed to have consented to any release of DIP Collateral authorized under the DIP

Loan Documents, (iii) shall not file any further financing statements, trademark filings, copyright

filings, patent filings, mortgages, notices of lien or similar instruments, enter into any control

agreement, or otherwise take any action to perfect their security interests in the DIP Collateral

unless, solely as to this clause (iii), the DIP Agent files financing statements or other documents

to perfect the liens granted pursuant to this Interim Order, or as may be required by applicable

state law to continue the perfection of valid and unavoidable liens or security interests as of the

Petition Date and (iv) shall not seek to terminate or modify the use of Cash Collateral.

19.    **Further Assurances**.  The DIP Debtors are authorized to execute and deliver to

the DIP Agent, the DIP Lenders, the Prepetition First Lien Secured Parties all such agreements,

25351521.8

financing statements, instruments and other documents as the DIP Agent, DIP Lenders, Prepetition First Lien Secured Parties may reasonably request to evidence, confirm, validate or perfect the DIP Liens or the Adequate Protection Liens granted pursuant hereto.  Further, the DIP Debtors are authorized to do and perform all acts, to make, execute and deliver all instruments and documents, and to pay all reasonable fees and expenses that may be required or necessary for the DIP Debtors' performance under the DIP Loan Documents, including, without limitation, (i) the execution of the DIP Loan Documents and (ii) the payment of the fees, costs and other expenses described in the DIP Loan Documents as such become due.  If the DIP Agent or the Prepetition Agent hereafter reasonably requests that the DIP Debtors execute and deliver to the DIP Agent or the Prepetition Agent, financing statements, security agreements, collateral assignments, or other instruments and documents reasonably considered by such agent to be necessary or desirable to further evidence the perfection of the DIP Liens or the Adequate Protection Liens, as applicable, the DIP Debtors are hereby authorized to execute and deliver such financing statements, security agreements, collateral assignments, instruments, and documents, and the DIP Agent or the Prepetition Agent is hereby authorized to file or record such documents in its discretion without seeking modification of the automatic stay under section 362 of the Bankruptcy Code.

20.    **506(c) Waiver**.  Upon the entry of a Final Order granting such relief, except to the extent of the Carve-Out, the DIP Debtors, on behalf of themselves and their estates, shall irrevocably waive and shall be prohibited from asserting any surcharge claim, under section 506(c) of the Bankruptcy Code or otherwise, for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by the DIP Secured Parties or the Prepetition First Lien Secured Parties (collectively, "**Secured Lending Entities**") upon the

DIP Collateral or the Prepetition First Lien Collateral (as applicable).  Subject to the entry of a Final Order granting such relief, in no event shall the Secured Lending Entities be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to the DIP Collateral or the Prepetition First Lien Collateral (as applicable), and proceeds shall be received and applied pursuant to this Interim Order and the DIP Loan Documents notwithstanding any other agreement or provision to the contrary.

21.    **Restrictions on Granting Postpetition Liens**.  Except as expressly permitted by the DIP Loan Documents, absent further Court order or the consent of the Secured Lending Entities, the Debtors will not, at any time during the Chapter 11 Cases, grant mortgages, security interests or liens in the DIP Collateral (or any portion thereof) having a priority senior to the DIP Liens to any other parties pursuant to section 364(d) of the Bankruptcy Code or otherwise.

22.    **Automatic Effectiveness of Liens**.  Automatically upon entry of this Interim Order, the DIP Liens and the Adequate Protection Liens shall be deemed to be valid, perfected, enforceable, nonavoidable and effective by operation of law, and not subject to challenge as of the Petition Date, without the need for (a) executing any control agreements, landlord waivers (unless required by law or contract), mortgagee waivers, bailee waivers or warehouseman waivers; (b) giving, filing or recording of any UCC-1 financing statements, mortgages, deeds of trust, leasehold mortgages, notices to account debtors or other third parties, notices of lien or similar instruments in any jurisdiction (including filings with the United States Patent and Trademark Office, the United States Copyright Office or any similar agency in respect of trademarks, copyrights, trade names or patents with respect to intellectual property), (c) taking possession or control of any collateral, or (d) further action of any kind (including execution of any security agreements, pledge agreements, control agreements, lockbox agreements or escrow

agreements).  Subject to section 1146(a) of the Bankruptcy Code, except as otherwise provided herein, any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for the DIP Debtors to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other DIP Collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code.  Any such provision shall have no force and effect with respect to the granting of post-petition liens on such leasehold interest or the proceeds of any assignment and/or sale thereof by the DIP Debtors in favor of the DIP Secured Parties in accordance with the terms of this Interim Order.

23.     **Automatic Stay**.  As provided herein, subject only to the provisions of the DIP Credit Agreement, the Borrower's right during the Remedies Notice Period (as defined below) to contest whether, in fact, an Event of Default has occurred, and without further order from this Court, the automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the DIP Secured Parties to exercise, upon the occurrence and during the continuance of any Event of Default, all rights and remedies provided for in the DIP Loan Documents, and to take any or all of the following actions, so long as the DIP Agent has provided five (5) business days' prior written notice to the DIP Debtors, their bankruptcy counsel, counsel to the Committee, if any, counsel to the respective Secured Lending Entities and the U.S. Trustee (such notice period, the "Remedies Notice Period"): (a) foreclose on the Collateral; (b) enforce all of the guaranty rights; (c) accelerate all Loans and other outstanding obligations under the DIP Facility; and (d) declare the principal of and accrued interest, premiums, fees and expenses constituting the obligations under the DIP Facility Loans

to be due and payable.  The rights and remedies of the DIP Agent and DIP Secured Parties specified herein are cumulative and not exclusive of any rights or remedies that the DIP Agent and the DIP Secured Parties may have under the DIP Loan Documents or otherwise.  The DIP Debtors are authorized to cooperate fully with the DIP Agent and the DIP Secured Parties in their exercise of rights and remedies, whether against the DIP Collateral or otherwise.  This Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this paragraph and relating to the application, re-imposition or continuance of the automatic stay as provided hereunder.

24.    **Budget**.  Attached hereto as <u>Exhibit 2</u> is a cash-flow budget setting forth all projected cash receipts and cash disbursements (by line item) on a weekly basis for the 5-week period commencing on the Petition Date (the "**Initial Approved Budget**").  As set forth in the DIP Credit Agreement (i) the Initial Approved Budget may be modified or supplemented from time to time (but not more than twice per month unless otherwise agreed by the Requisite Lenders) by additional budgets prepared by the DIP Debtors in the form of the Initial Budget or in such other form as the Requisite Lenders may agree in their reasonable discretion (the "**Proposed Budget**"); <u>provided</u> that on or before one Business Day following the date that is three weeks after the Closing Date, the DIP Borrowers shall deliver to the DIP Agent an updated Proposed Budget reflecting the actual results of the preceding three week period, which Proposed Budget in form and substance satisfactory to the Administrative Agent and the Required Lenders shall become the Approved Budget; (ii) to the extent such Proposed Budget is so approved by the Requisite Lenders, such Proposed Budget shall thereafter be the supplemental approved budget, without subsequent notice to or order of the Court (each such additional budget, a "**Supplemental Approved Budget**"; each such budget, and the Initial Approved Budget, an

"**Approved Budget**"); (iii) in the event that any Proposed Budget is not so approved, the last Approved Budget without giving effect to any update, modification or supplement shall apply to the projection period; (iv) the DIP Debtors' cumulative actual receipts shall be not be less than 85% of budgeted receipts for each applicable Test Period (as defined below) (the "**Permitted Collections Budget Variances**"), as set forth in the Approved Budget and tested on a cumulative basis; provided that any positive receipt variance to the Approved Budget from any Test Period may be applied to any subsequent Test Period's receipts for the purpose of determining compliance with the foregoing for such Test Period; (v) the DIP Debtors' actual disbursements shall be not more than (a) in the aggregate, 15% greater than the budgeted disbursements for the corresponding Test Period as set forth in the Approved Budget and tested on a cumulative basis and (b) with respect to "Restructuring/Non-recurring Disbursements," 10% greater than the budgeted disbursements for each such line item for the corresponding Test Period as set forth in the Approved Budget and tested on a line-item basis (the variances described in clauses (a) and (b), the (the "**Permitted Expenditures Budget Variances**"); provided that any positive disbursement variance to the Approved Budget from any Test Period (i.e., such expenditures are less than the budgeted amount) may be applied to any subsequent Test Period's disbursements for the purpose of determining compliance for such Test Period, as applicable; (vi) the DIP Debtors' net cash, representing cumulative receipts less aggregate Total Disbursements (as defined in the Approved Budget), for the Test Period shall not be below an amount that is $3 million less than the amount of net cash reflected in the Approved Budget over any Test Period subject to an overall maximum negative variance of $4 million over the tenor of the DIP Facility (the "**Permitted Net Cash Budget Variances**" and together with the Permitted Collections Budget Variances and the Permitted Expenditures Budget Variances, the "**Permitted**

**Budget Variances**"); (vii) the Permitted Budget Variances shall be tested weekly, on a rolling-four week basis (each such four-week period, a "**Test Period**"), beginning with the first full week ended following the Petition Date; and (viii) the DIP Debtors shall deliver to the DIP Agent by 12:00 p.m., Eastern time, on Thursday of each week, (A) beginning with the first such day following the Closing Date, a report in a form reasonably acceptable to the DIP Agent reflecting variance from the Approved Budget on a line item and cumulative basis and (B) accounts payable reports and accounts receivable reports in form reasonably agreed between the DIP Debtors and the DIP Agent.  The Initial Approved Budget is an integral part of the DIP Credit Agreement and this Interim Order and has been relied upon by the DIP Secured Parties to provide the DIP Facility and for the Prepetition First Lien Secured Parties to consent to the use of Cash Collateral, in each case in accordance with this Interim Order.

25.    **Credit Bid**.  Subject to any bidding or auction procedures subsequently approved by the Court:

(a)    the DIP Agent, at the direction of the Required Lenders (as defined in the DIP Credit Agreement), shall have the right to credit bid up to the full amount of the DIP Facility Loans in any sale of the DIP Collateral under or pursuant to (i) section 363(k) of the Bankruptcy Code, (ii) a plan of reorganization or a plan of liquidation under section 1129 of the Bankruptcy Code, or (iii) a sale or disposition by a chapter 7 trustee for any DIP Debtor under section 725 of the Bankruptcy Code; and in each of case (i), (ii) and (iii), such credit bid by the DIP Agent shall be binding upon all DIP Lenders.

(b)    subject to the entry of a Final Order granting such relief, the Prepetition Agent, at the direction of the Required Lenders (as defined in the Prepetition First Lien Credit Agreement), shall have the right to credit bid up to the full amount of the Prepetition First

Lien Loans in any sale of the Prepetition First Lien Collateral under or pursuant to (i) section 363(k) of the Bankruptcy Code, (ii) a plan of reorganization or a plan of liquidation under section 1129 of the Bankruptcy Code, or (iii) a sale or disposition by a chapter 7 trustee for any DIP Debtor under section 725 of the Bankruptcy Code; and in each of case (i), (ii) and (iii), such credit bid by the Prepetition Agent shall be binding upon all Prepetition First Lien Lenders.

26. **Binding Effect**. To the extent permitted by law and subject to Paragraph 17, the provisions of this Interim Order shall be binding upon and inure to the benefit of the Secured Lending Entities, the Debtors, any Committee appointed in these Chapter 11 Cases, and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors). To the extent permitted by applicable law, this Interim Order shall bind any trustee hereafter appointed for the estate of any of the Debtors, whether in these Chapter 11 Cases or in the event of the conversion of any of the Chapter 11 Cases to a liquidation under chapter 7 of the Bankruptcy Code.

27. **Survival**. The provisions of this Interim Order and any actions taken pursuant hereto shall survive the entry of any order: (i) confirming any plan of reorganization or liquidation in any of the Chapter 11 Cases (and, to the extent not satisfied in full in cash, the DIP Obligations shall not be discharged by the entry of any such order, pursuant to section 1141(d)(4) of the Bankruptcy Code, each of the Debtors having hereby waived such discharge); (ii) converting any of the Chapter 11 Cases to a chapter 7 case; or (iii) dismissing any of the Chapter 11 Cases, and the terms and provisions of this Interim Order as well as the DIP Superpriority

Claims and the DIP Liens in the DIP Collateral granted pursuant to this Interim Order and the DIP Loan Documents (and with respect to the entry of any order as set forth in (ii) or (iii) herein, the Adequate Protection Liens and Adequate Protection Superpriority Claims) shall continue in full force and effect notwithstanding the entry of any such order.  Such claims and liens shall maintain their priority as provided by this Interim Order and the DIP Loan Documents, and to the maximum extent permitted by law, until all of the DIP Obligations are indefeasibly paid in full in cash and discharged.  The Debtors shall not propose or support any plan of reorganization or liquidation be allowed to alter the terms of repayment of any of the DIP Obligations from those set forth in the DIP Loan Documents without the prior written consent of the DIP Agent.

28.    **Reallocation**.  For the avoidance of doubt, in the event that it is determined by this Court that the Prepetition First Lien Secured Parties did not maintain valid, perfected and enforceable liens on the Prepetition First Lien Collateral, the Court reserves the right to reallocate any payments made to the Prepetition First Lien Secured Parties and modify any liens and claims granted pursuant to this Order, including the grant of adequate protection to the Prepetition First Lien Secured Parties.

29.    **Amendments and Modifications of DIP Loan Documents**.  Each of the DIP Debtors is expressly authorized and empowered to enter into amendments or other modifications of the DIP Loan Documents without further order of the Court, in each case, in such form as the DIP Agent and the DIP Lenders may agree with the DIP Debtors in writing; _provided_ that notice of any material modification or amendment not contemplated by the DIP Documents shall be provided by the DIP Debtors to the U.S. Trustee, counsel to the Prepetition Agent, and counsel to any Committee, which parties may object to such modification or amendment, in writing, within three (3) business days from the date of the transmittal of such notice (which, to the extent such

contact information for such parties is known to the DIP Debtors, shall be transmitted by fax or

e-mail, and, if not known, by overnight mail); <u>further provided</u> that, notwithstanding the

foregoing, any material modification of the DIP Loan Documents shall be filed with the Court;

and <u>further provided</u> that, if such objection is timely provided, then such modification or

amendment shall be permitted only pursuant to an order of the Court, the entry of which may be

sought on an expedited basis.

30.    **Insurance Policies**.  Upon entry of this Interim Order, to the extent permitted by

law, the DIP Agent and DIP Secured Parties shall be, and shall be deemed to be, without any

further action or notice, named as additional insureds and loss payees, as applicable, on each

insurance policy maintained now or in the future by any of the Debtors which in any way relates

to the DIP Collateral.  Notwithstanding the foregoing, the Debtors are authorized to take any

reasonable actions that the DIP Agent may request, in its sole and absolute discretion, to have the

DIP Agent, on behalf of the DIP Secured Parties, added as an additional insured and loss payee

on each insurance policy.

31.    **Limits on Lender Liability**.  Subject to Paragraph 17, nothing in this Interim

Order, any of the DIP Loan Documents, or any other documents related thereto shall in any way

be construed or interpreted to impose or allow the imposition upon the DIP Secured Parties of

any liability for any claims arising from any activities by the DIP Debtors in the operation of

their businesses or in connection with the administration of these Chapter 11 Cases.  Subject to

the entry of a Final Order, the DIP Secured Parties shall not, solely by reason of having made

loans under the DIP Facility, be deemed in control of the operations of the DIP Debtors or to be

acting as a "responsible person" or "owner or operator" with respect to the operation or

management of the DIP Debtors (as such terms, or any similar terms, are used in the United

States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 et seq., as amended, or any similar federal or state statute). Nothing in this Interim Order or the DIP Loan Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the DIP Debtors.

32. **Release of Claims and Defenses**. Subject to Paragraph 17 and the entry of a Final Order granting such relief, each DIP Debtor hereby releases and discharges each of the DIP Secured Parties, in their capacity as such, together with their respective affiliates, agents, attorneys, officers, directors and employees (collectively, the "**Released Parties**"), from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, any of the DIP Loan Documents or any loans under the DIP Facility, any aspect of the relationship between the DIP Debtors, on the one hand, and any or all of the Released Parties, on the other hand, relating to any of DIP Loan Documents or any transaction contemplated thereby or any other acts or omissions by any or all of the Released Parties in connection with the DIP Facility or any of the DIP Loan Documents or their prepetition relationship with such DIP Debtor or any affiliate thereof relating to any of the DIP Loan Documents or any transaction contemplated thereby, including, without limitation, any claims or defenses under chapter 5 of the Bankruptcy Code or any other causes of action (collectively, the "**Claims and Defenses**").

33. **Access to DIP Collateral**. Subject to applicable law and entry of a Final Order granting such relief, without limiting any other rights or remedies of the DIP Agent, exercisable on behalf of the DIP Secured Parties, contained in this Interim Order or the DIP Loan Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Loan Documents, upon seven (7) days' written notice to counsel to the DIP Debtors, counsel to the

Committee (if any) and to the landlord of any leased premises that an Event of Default or the Scheduled Termination Date has occurred and is continuing under the DIP Loan Documents, the DIP Agent may, subject to applicable law and any separate agreement by and between such landlord and the DIP Agent, enter upon any leased premises of the DIP Debtors or any other party for the purpose of exercising any remedy with respect to DIP Collateral located thereon and shall be entitled to all of the DIP Debtors' rights and privileges as lessee under such lease without interference from the landlords thereunder; provided that the DIP Agent shall only be obligated to pay rent of the DIP Debtors that first accrues after the DIP Agent's written notice referenced above and that is payable during the period of such occupancy by the DIP Agent, calculated on a daily per diem basis. Nothing herein shall require the DIP Agent to assume any lease as a condition to the rights afforded to the DIP Agent in this Paragraph. In addition, any landlord's lien, right of distraint or levy, security interest or other interest that any landlord, warehousemen or landlord's mortgagee may have in any DIP Collateral of the DIP Debtors located on such leased premises, to the extent the same is not void under section 545 of the Bankruptcy Code, is hereby subordinated to the DIP Obligations, DIP Liens, and DIP Superpriority Claims.

34.    **Protection Under Section 364(e)**. If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect the validity or enforceability of any DIP Obligation, DIP Lien, Adequate Protection Superpriority Claim, or Adequate Protection, or any other claim, lien, security interest or priority authorized or created hereby or pursuant to the DIP Loan Documents or Adequate Protection Obligations incurred prior to the actual receipt by the DIP Agent or the Prepetition Agent, as applicable, of written notice of the effective date of such reversal, modification,

vacation or stay.  Notwithstanding any such reversal, modification, vacation or stay, any use of Cash Collateral or the incurrence of DIP Obligations, or Adequate Protection Obligations by the DIP Debtors prior to the actual receipt by the DIP Agent or the Prepetition Agent, as applicable, of written notice of the effective date of such reversal, modification, vacation or stay, shall be governed in all respects by the provisions of this Interim Order, and the Prepetition First Lien Secured Parties shall be entitled to all of the rights, remedies, protections and benefits granted under section 364(e) of the Bankruptcy Code, this Interim Order, and the DIP Loan Documents with respect to all uses of Cash Collateral and the incurrence of DIP Obligations and Adequate Protection Obligations.

35.    **Effect of Dismissal of Chapter 11 Cases**.  If the Chapter 11 Cases are dismissed, converted or substantively consolidated, such dismissal, conversion or substantive consolidation of these Chapter 11 Cases shall not affect the rights of the Secured Lending Entities under their respective DIP Loan Documents, Prepetition First Lien Loan Documents or this Interim Order, and all of the respective rights and remedies thereunder of the Secured Lending Entities shall remain in full force and effect as if the Chapter 11 Cases had not been dismissed, converted, or substantively consolidated.  If an order dismissing any of the Chapter 11 Cases is at any time entered, such order shall provide (in accordance with Sections 105 and 349 of the Bankruptcy Code) that: (i) the DIP Liens and DIP Superpriority Claims granted to the DIP Agent and DIP Secured Parties and the protections afforded to the DIP Agent and the DIP Secured Parties pursuant to this Interim Order and the DIP Loan Documents shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all DIP Obligations shall have been paid and satisfied in full (and that such DIP Liens, DIP Superpriority Claims and other protections shall, notwithstanding such dismissal, remain binding on all

25351521.8

interested parties); (ii) those Prepetition FL Liens, Adequate Protection Liens and Adequate Protection Superpriority Claims granted to the Prepetition First Lien Secured Parties shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all Prepetition Indebtedness shall have been paid and satisfied in full (and that such Adequate Protection Liens, Adequate Protection Superpriority Claims, and other adequate protection granted to or conferred on the Prepetition First Lien Secured Parties shall, notwithstanding such dismissal, remain binding on all interested parties); and (iii) to the greatest extent permitted by applicable law, this Court shall retain jurisdiction, notwithstanding such dismissal, for the purpose of enforcing the DIP Liens, the Prepetition FL Liens, the Adequate Protection Liens, the DIP Superpriority Claims and the Adequate Protection Superpriority Claims referred to herein.

36. **Jurisdiction**.  The Bankruptcy Court shall have exclusive jurisdiction with respect to any and all disputes or matters under, or arising out of or in connection with, either the DIP Facility or the DIP Loan Documents.

37. **Authorized Signatories**.  The signature of any Authorized Officer (as defined in the DIP Debtor's corporate resolutions filed with the Petition) or DIP Debtors' attorneys, appearing on any one or more of the DIP Loan Documents shall be sufficient to bind the DIP Debtors.  No board of directors or other approval shall be necessary.

38. **Order Effective**.  This Interim Order shall be effective as of the date of the signature by the Court.

39. **Controlling Effect of Interim Order**.  To the extent any provision of this Interim Order conflicts or is inconsistent with any provision of the Motion, any prepetition agreement or any DIP Loan Document, the provisions of this Interim Order shall control.

25351521.8

45

40.    ***Nunc Pro Tunc* Effect of this Interim Order**.   This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable *nunc pro tunc* to the Petition Date immediately upon execution thereof.

41.    **No Modification of Interim Order**.   Until and unless the DIP Obligations and the Prepetition First Lien Obligations (other than contingent obligations with respect to then unasserted claims) have been indefeasibly paid in full in cash, and all commitments to extend credit under the DIP Facility have been terminated, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly: (a) without the prior written consent of the DIP Agent (or the Prepetition Agent, as applicable), (i) any modification, stay, vacatur, or amendment to this Interim Order; or (ii) a priority claim for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including any administrative expense of the kind specified in sections 503(b), 506(c), 507(a), or 507(b) of the Bankruptcy Code) in the Cases or any successor cases, equal or superior to the DIP Superpriority Claims or Adequate Protection Superpriority Claims, other than the Carve-Out; (b) without the prior written consent of the DIP Agent (or the Prepetition Agent, as applicable) for any order allowing use of Cash Collateral resulting from DIP Collateral or Prepetition First Lien Collateral; (c) without the prior written consent of the DIP Agent, any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens, except as specifically provided in the DIP Loan Documents; or (d) without the prior written consent of the Prepetition Agent, any lien on any of the DIP Collateral with priority equal or superior to the Prepetition FL Liens or Adequate Protection Liens, except as specifically provided in the DIP Loan Documents.    The Debtors irrevocably waive any right to seek any amendment,

25351521.8

modification or extension of this Interim Order without the prior written consent, as provided in the foregoing, of the DIP Agent and the Prepetition Agent, and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Agent or the Prepetition Agent.

42.    **No Waiver by Failure to Seek Relief**.    The failure of the DIP Agent, the DIP Lenders, or the Prepetition First Lien Secured Parties to seek relief or otherwise exercise their rights and remedies under this Interim Order, the DIP Loan Documents, the Prepetition First Lien Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP Agent, the DIP Lenders or the Prepetition First Lien Secured Parties.

43.    **Proofs of Claim**.    The DIP Secured Parties shall not be required to file proofs of claim or requests for administrative expenses in any of the Chapter 11 Cases and, notwithstanding anything contained in this Interim Order, the Debtors' stipulations and the other provisions of this Interim Order related to the claims granted herein shall be deemed to constitute a timely filed proof of claim or request for administrative expense, as applicable.

44.    **Rights Reserved**.    Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the DIP Agent's, the DIP Lenders', and the Prepetition First Lien Secured Parties' right to seek any other or supplemental relief in respect of the Debtors; (b) any of the rights of any of the DIP Agent, the DIP Lenders, and/or the Prepetition First Lien Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of the Cases or any successor case, conversion of the Cases to cases under Chapter 7, or the appointment of a Chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions

25351521.8

of section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans; or (c) any other rights, claims or privileges (whether legal, equitable or otherwise) of any of the DIP Agents, the DIP Lenders, or the Prepetition First Lien Secured Parties.  Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Debtors', a Committee's (if appointed), or any party in interest's right to oppose any of the relief requested in accordance with the immediately preceding sentence except as expressly set forth in this Interim Order

45.    **No Superior Rights of Reclamation**.  Subject to entry of a Final Order, Based on the continuation of the Prepetition FL Liens, the relation back of the DIP Liens, and the integrated nature of the DIP Facility and the Prepetition First Lien Loan Documents, in no event shall any alleged right of reclamation or return (whether asserted under section 546(c) of the Bankruptcy Code or otherwise) be deemed to have priority over the DIP Liens.

46.    **Final Hearing** The final hearing with respect to the relief requested in the Motion shall be held on January 15, 2020 at 1:30 p.m. (prevailing Eastern Time).  Any objections or responses to entry of the proposed Final Order shall be filed on or before 4:00 p.m. (prevailing Eastern Time) on January 8, 2020 and served on the following parties:  (a) the Debtors, Attn: M. Ben Jones; (b) proposed counsel for the Debtors, Debevoise & Plimpton LLP, Attn: M. Natasha Labovitz and Nick S. Kaluk, III, and Young Conaway Stargatt & Taylor, LLP, Attn: Edmon Morton and Ian Bambrick; (c) counsel to any statutory committee appointed in the chapter 11 cases, (d) the U.S. Trustee and (e) counsel to the DIP Agent and Prepetition Agent, Winston & Strawn LLP, 35 West Wacker Drive, Chicago, IL 60601, Attn.: Gregory M. Gartland and Daniel J. McGuire, and Womble Bond Dickinson (US) LLP, 1313 North Market Street, Suite 1200, Wilmington, Delaware 19801, Attn.: Matthew Ward.  Notice of this Interim Order will be served

in accordance with Local Rule 9013-1(m).  If no objections are timely filed, this Court may enter

a Final Order without further notice or a hearing.

Dated:   December 19, 2019
         Wilmington, Delaware

_____
BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE

25351521.8

49